UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

           Plaintiff,       Case No. 17-20334

v.                                  Judith E. Levy
                                  United States District Judge
Jonathan Wade Wright,      Anthony P. Patti
                                  Magistrate Judge
          Defendant.

_____/

**OPINION AND ORDER DENYING DEFENDANT JONATHAN WADE WRIGHT'S RENEWED MOTION FOR COMPASSIONATE RELEASE [47]**

On June 27, 2018, Defendant Jonathan Wade Wright pled guilty to possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A). (ECF No. 30.) The Court sentenced Defendant to 60 months' imprisonment, to be served consecutively to the sentenced imposed by the Honorable Judge Nancy G. Edmunds in Case No. 17-20022. (*Id.* at PageID.197.)

On June 9, 2020, Defendant moved for compassionate release and/or reduction of his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), arguing that his asthma, obesity, and chronic kidney disease rendered

him particularly susceptible to the COVID-19 pandemic and therefore constituted "extraordinary and compelling reasons" for release. (ECF No. 43.) Because Defendant was serving Judge Edmunds' sentence at the time of his motion and would not begin serving the sentenced imposed by this Court until September 17, 2020, the Court stayed Defendant's motion pending the resolution of Defendant's identical compassionate release motion before Judge Edmunds. (ECF No. 42.) On October 6, 2020, after Judge Edmunds denied Defendant's separate compassionate release motion and Defendant began serving the sentenced imposed by this Court, the undersigned denied without prejudice Defendant's motion. (ECF No. 46.) Specifically, the Court agreed with Judge Edmunds that Defendant's alleged asthma appeared to be mild and was therefore not currently "a CDC-supported justification for compassionate release." (*Id.* at PageID.377.) Because there was no evidence of obesity or a kidney condition, the Court denied without prejudice Defendant's motion and noted that, "[s]hould [his] condition change, [Defendant] is of course free to renew his motion." (*Id.* at PageID.380.)

On October 9, 2020[1], Defendant filed a *pro se* motion requesting that the Court reconsider its denial of compassionate release.[2] (ECF No. 47.) In the motion, Defendant raises only the issue of his obesity and attaches a letter from the Bureau of Prison health services report confirming that his Body Mass Index was 36 as of October 20, 2020. (ECF No. 347, PageID.386.) Accordingly, the Court takes a renewed look at Defendant's request for compassionate release. For the reasons below, the Court DENIES Defendant's motion.

After the Court denied Defendant's initial motion, the Sixth Circuit provided updated guidance regarding the "three step" test for compassionate release. *United States v. Jones*, No. 20-3701, 2020 WL 6817488, at *6 (6th Cir. Nov. 2020). According to *Jones*, courts conducting compassionate release analysis must consider the following:

1. First, a court must "find whether extraordinary and compelling reasons warrant a sentence reduction." *Id.*

2. Second, a court must "find whether such a reduction is consistent with *applicable* policy statements issued by the Sentencing

---

[1] Docketed on November 23, 2020.

[2] Pursuant to the Court's October 6 Order granting Defendant explicit permission to file a renewed motion for compassionate release should new medical evidence arise, the Court interprets this *pro se* motion as a renewed motion for compassionate release rather than a motion for reconsideration. (*See* ECF No. 46.)

3

  Commission." *Id.* (emphasis in original). The Sixth Circuit in *Jones* found that, "until the federal Sentencing Commission updates [its policy statements] to reflect the First Step Act," there are currently no applicable policy statements that a district court must consider when weighing compassionate release motions. In the interim, "district courts have *full discretion* [] to determine whether an 'extraordinary and compelling' reason justifies compassionate release." *Id.* at *7 (emphasis added).

3. Finally, the Court must "consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by steps one and two is warranted in whole or in part under the particular circumstances of the case." *Id.* at *6 (internal citations omitted).

The Sixth Circuit additionally emphasized in *Jones* that district courts have an "obligation[] to explain their factual reasons when issuing compassionate release decisions," particularly with regard to analysis of the § 3553 factors. *Id.* at *9, *11.

  As to steps one and two, the Court assumes for the sake of argument that Defendant's BMI of 36 constitutes extraordinary and compelling reasons for compassionate release. *See* People with Certain Medical Conditions; Overweight, Obesity, and Severe Obesity, Centers for Disease Control (Dec. 1, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-

4

conditions.html#obesity (advising that a BMI between 30 and 40 "increases [one's] risk of severe illness from COVID-19"); *see also Jones*, 2020 WL 6817488, at *7 (noting that the district court assumed that the detainee's obesity and prior bout with tuberculosis constituted extraordinary and compelling reasons justifying release, but denied release on the basis of the § 3553 factors).

The Court makes this assumption because, regardless of Defendant's medical circumstances, careful analysis of his § 3553 factors as required by *Jones* compel a denial of Defendant's motion for compassionate release. During a compassionate release analysis, the applicable § 3553 sentencing factors include: the nature and circumstance of the offense and the defendant's history and characteristics; the need for the defendant's sentence to reflect the seriousness of the offense; the need to afford adequate deterrence to criminal conduct; the need to protect the public from further crimes; and the need to provide the defendant with certain services. *See* 18 U.S.C. § 3553(a)(1)-(2).

After considering these same factors when sentencing Defendant in June 2018, the Court sentenced Defendant to 60 months' imprisonment,

5

to be served consecutively to the 30-month sentence imposed by Judge Edmunds in Case No. 17-20022. (ECF No. 30.) This sentence reflected the severity of Defendant's offense of possession of a firearm in furtherance of a drug trafficking crime, which he committed in violation of 18 U.S.C. § 924(c)(1)(A). (*Id.*) The factual basis for Defendant's guilty plea was as follows:

> On approximately February 8, 2017, federal law enforcement agents executed a search warrant at the defendant Jonathan Wright's residence on Stahelin Road in Detroit, Michigan. Inside the residence, in a room Wright identified as his "office," agents found two loaded pistols in the top drawer of a nightstand: one model M&P Shield 9mm Smith and Wesson pistol and one model CPX-2 9mm SCCY pistol. In the second drawer from the top, agents found (i) two glass jars containing approximately 81 grams of marijuana in total and (ii) five plastic bags containing approximately 147 grams of marijuana in total, evenly distributed across the bags. During a post-*Miranda* interview conducted while the search was ongoing, Wright stated that he sells marijuana from inside his residence and that he possessed the firearms for protection. Wright stipulates and agrees that he possessed the marijuana found in his office with the intent to sell it, that the firearms found in his office were in close proximity to the marijuana and quickly and easily available for his use, and that he possessed the firearms in furtherance of his marijuana trafficking.

(ECF No. 26, PageID.166.) Moreover, Defendant did not engage in this conduct in isolation, but in association with a notoriously violent gang.

6

As the Court indicated at initial sentencing, this conduct—mixing drug dealing with multiple loaded firearms, particularly in the context of a gang—is terribly serious. Additionally, Defendant did not begin serving the sentence imposed by this Court until September 17, 2020, meaning that he has served less than 5% of his sentence—fewer than 3 months out of 60.[3] (ECF No. 42.) While the Court does not consider a low percentage of "time served" to be ubiquitously fatal to all compassionate release motions, Defendant's underlying conduct in this case posed a great risk of danger to the public. Accordingly, the Court cannot conclude that Defendant's 2.5 months of imprisonment for his underlying offense has "reflect[ed] the seriousness of the offense" or "afford[ed] adequate deterrence to criminal conduct." § 3553(a). Nor can the Court conclude that there would be no risk to the public upon Defendant's early release. *Id.*

---

[3] Even with a projected release date of December 20, 2024 with good time credit, Defendant has served minimal time for his current sentence.

Accordingly, the Court finds that compassionate release would not be consistent with the § 3553 sentencing factors.[4] Defendant's motion for compassionate release is, therefore, DENIED.

IT IS SO ORDERED.

Dated: December 7, 2020      s/Judith E. Levy
Ann Arbor, Michigan      JUDITH E. LEVY
    United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 7, 2020.

    s/William Barkholz
    WILLIAM BARKHOLZ
    Case Manager

---

[4] Judge Edmunds reached the same conclusion when she considered Defendant's identical compassionate release motion. (ECF No. 340, PageID.5175.)